## FRANK V. STRAUSS & CO. v. HAMMERSTEIN.

(Supreme Court, Appellate Division, First Department.    July 11, 1912.)

1. SUNDAY (§ 17*)—CONTRACTS—VIOLATION OF LAW.

Parties to a contract for the program privilege at an opera house contemplating the giving of Sunday concerts for which singers who participated in grand opera were available, in the absence of any reason why they should not be able to give a concert which would meet any reasonable construction of the law against theatrical or other prohibited entertainments on Sunday, will not be assumed to have intended any violation of law.

[Ed. Note.—For other cases, see Sunday, Cent. Dig. §§ 48, 49; Dec. Dig. § 17.*]

2. CONTRACTS (§ 189*)—CONSTRUCTION—ACTS CONSTITUTING BREACH.

A contract between plaintiff and defendant, the manager of an opera house, for the exclusive program privilege, provided that, beginning at a certain date, there would be at least five performances of grand opera and one Sunday concert each week for twenty consecutive weeks, for which plaintiff was to pay $100 for each performance of grand opera, and that, if grand opera was discontinued during the term of the agreement, plaintiff should have the program privilege for such other performances as might be given at the opera house, at a different rate, the option to be exercised by written notice to defendant. Held, that

the contract imported an absolute agreement by defendant to give a certain number of performances of grand opera.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 811–845, 900–902, 905; Dec. Dig. § 189.*]

3. CONTRACTS (§ 189*)—BREACH—PERFORMANCE ACCEPTED IN PLACE OF ORIGINAL RIGHT.

Such contract created an alternative privilege in case of discontinuance of grand opera, upon the exercise of which by plaintiff he could not recover for a breach of defendant's absolute undertaking to give grand opera.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 811–845, 900–902, 905; Dec. Dig. § 189.*]

4. CONTRACTS (§ 338*)—ACTION FOR BREACH—PLEADING—PERFORMANCE ACCEPTED IN PLACE OF ORIGINAL RIGHT.

The exercise of the option to accept the substitute performances was a matter to be pleaded and proven by defendant.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1691, 1692, 1695, 1698–1705; Dec. Dig. § 338.*]

Miller, J., dissenting.

Appeal from Trial Term, New York County.

Action by Frank V. Strauss & Co. against Oscar Hammerstein. From a judgment entered on the dismissal of the complaint at the beginning of the trial, and before the introduction of any proof, on the ground that it failed to state a cause of action, plaintiff appealed. Judgment reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

John B. Stanchfield, of New York City, for appellant.
Louis J. Vorhaus, of New York City, for respondent.

DOWLING, J. By its complaint plaintiff set forth that on February 18, 1910, it entered into a contract in writing with defendant, then and theretofore engaged in managing and producing performances of grand opera at the Manhattan Opera House in the city of New York. From the contract, a copy of which is annexed thereto, it appears that defendant granted to plaintiff for the period of three years beginning September 1, 1910, the sole and exclusive privilege to publish, circulate, and distribute in and about said opera house the only programs to be used therein. The following paragraph then appears; the party of the first part being the defendant herein:

' "Second. The party of the first part hereby agrees that during the term of this agreement grand opera of the same high class will be produced in said Manhattan Opera House as during the season of 1909–1910; and that there shall be at least five performances of grand opera and one Sunday concert each week during a period of twenty consecutive weeks in each year, beginning with the month of November."

For the rights and privileges granted under the contract plaintiff agreed to pay $100 for each performance of grand opera during the period of 20 weeks in each year, the payments to be made in specified amounts, of which the first installment of $3,000 was duly paid on April 10, 1910. A clause provided that, if defendant should fail

to give during the said period of 20 weeks in each year 100 performances, a rebate of $100 per performance below that number shall be made to plaintiff.

The parties further agreed:

"Sixth. Should at any time during the term of this agreement, the giving of grand opera be discontinued in said Manhattan Opera House, and other performances of any kind whatsoever be thereafter given in the place thereof then the party of the second part shall, at its option, have all the rights and privileges of the program to be furnished in the said house, during the balance of the term of this agreement; the consideration then, however to be paid therefor, to be at the rate of three thousand ($3,000) dollars per annum, the same to be paid in quarterly-yearly payments. This option, however, if exercised, must be evidenced by a writing to that effect, to be given by the party of the second part unto the party of the first part within ten days after receiving written information from the party of the first part of such contemplated change."

Plaintiff avers that it has duly performed all the obligations on its part under the contract and its readiness and willingness to continue to perform, but that defendant before the first installment of $3,000 was paid, and without the knowledge of plaintiff, was negotiating to discontinue his performances of grand opera, and did, in fact, thereafter discontinue them, notifying plaintiff that he would not comply with the terms of the contract by presenting grand opera after September 1, 1910, and he has not in fact presented opera there since said date.

The dismissal of the complaint was predicated on two grounds: (1) That the sixth paragraph of the contract provided a substitute for the production of grand opera, and that the contingency of no such production being given was in the minds of the contracting parties, wherefore this privilege of furnishing the program for another form of entertainment was provided, and that the agreement to give a stipulated number of operatic performances contained in the third paragraph was not absolute but conditional only; (2) that the contract was illegal because it contemplated the giving of Sunday concerts.

[1] As to the latter ground, it will not be assumed that any violation of the law was intended by the parties to the contract; and, where there were available singers who were participating in performances of grand opera, no reason existed why they should not be able to give a concert which would meet any reasonable construction of the law against theatrical or other prohibited entertainments on Sunday.

[2, 3] As to the former ground, we are of the opinion that the agreement by defendant to give a certain number of performances of grand opera embraced in the second paragraph of the contract is absolute and unqualified, and that upon the conceded breach thereof a cause of action arose in favor of plaintiff. We are also of the opinion, however, that the sixth paragraph created an alternative privilege given to plaintiff, and that if it availed itself thereof, and, after receiving the notice from defendant therein referred to or otherwise, exercised the option thereby conferred and elected to avail itself of the right to furnish programs for the other performances

given in place of operatic ones, the plaintiff cannot recover herein, for a contingency had then arisen and been met by a new right of a kind agreed upon by the contracting parties as a substitute for the right originally granted.

[4] The exercise of the option to accept the program rights for the substituted performances is, however, a matter of defense. Plaintiff was not bound to go further than plead the breach of the agreement to give the stipulated operatic performances. The acceptance of the substitutional rights was pleaded by defendant, and the burden of pleading and proving the same is on him. The complaint, therefore, should not have been dismissed, for it stated a good cause of action.

The judgment appealed from will be reversed and a new trial ordered, with costs to appellant to abide the event.

INGRAHAM, P. J., and McLAUGHLIN and SCOTT, JJ., concur. MILLER, J., dissents.